## EX PARTE STARKE, IN RE PURVIANCE.

[PETITION FOR CERTIORARI TO REVISE PROCEEDINGS UNDER HABEAS CORPUS.]

1. *Classification and transfer of soldiers under act of congress approved February 17, 1864.*—Under the act of congress approved February 17, 1864, which provides for three different classes or grades of service, a junior reserve, on attaining the age of eighteen years, may be transferred to active duty in the field; while a person who was in active duty in the field at the date of the act, and who afterwards attains the age of forty-five years, is entitled to be transferred to the senior reserves; and a senior reserve, on attaining the age of fifty, is entitled to be discharged.

IN the matter of the petition of David R. Purviance for the writ of *habeas corpus*, by which he sought to procure

his discharge from the custody of Capt. E. T. Starke, the enrolling officer of the Confederate States for the county of Dallas, and from the military service of the Confederate States. The petitioner was enrolled on the 16th April, 1864, and attained the age of fifty years on the 24th July following. His claim to be discharged from military service, after attaining the age of fifty years, was denied by the officers of the bureau of conscription; and he thereupon sued out a writ of *habeas corpus*, before the Hon. Chancellor J. R. JOHN, at Selma, who, on the hearing, discharged him from custody. A bill of exceptions was reserved, on the part of the Confederate States, to the ruling and decision of the chancellor; and application is now made to this court, in the name of the enrolling officer, for the writ of *certiorari*, or other remedial process, to revise his decision.

WM. M. BYRD, for the Confederate States.
THOS. B. WETMORE, *contra.*

STONE, J.—There are difficulties in the way of any construction we may place on the act of February 17th, 1864, entitled "An act to organize forces to serve during the war."—Acts fourth session, first congress, p. 211. The words, "for the war," and "during the war," occur five times in the body of the act; and each time they are so placed as to qualify the term of service of the persons who, under the act, are declared to be "in the military service of the Confederate States." Section one declares, that "all white men, residents" &c., "between the ages of seventeen and fifty, shall be in the military service of the Confederate States for the war." Section two declares, that all of the persons mentioned in section one, "between the ages of eighteen and forty-five, and now in service, shall be retained during the present war with the United States, in the same regiments," &c. Section five, after defining the time and mode to be observed in the enrollment of persons between the ages of seventeen and eighteen, and forty-five and fifty, declares, that "any person, who shall fail to enroll himself, without a reasonable excuse" &c., "shall be placed in ser-

vice in the field, for the war, in the same manner as though he were between the ages of eighteen and forty-five." Section six provides, that persons required to enroll themselves under the fifth section—reserves for State defense—may relieve themselves of the duty of assembling at places of rendezvous, by forming themselves into voluntary organizations, furnishing proper muster-rolls, &c.; "and having so organized," proceeds to say, if they "tender their services as volunteers during the war, to the president, * * * they may be accepted as minute-men for service in such State." Section seven, which relates also to reserves for State defense, provides, "that any person who shall fail to attend at the place of rendezvous, as required by the authority of the president, without a sufficient excuse, to be judged of by him, shall be liable to be placed in service in the field, for the war, as if he were between the ages of eighteen and forty-five years." This persistent use of the terms, *for the war*, and *during the war*, presents the difficulty in the way of holding that, when the persons composing the class of senior reserves severally attain the age of fifty they pass out of the service.

On the other hand, there is no 'provision in the act we are construing, which transfers, or directs the transfer of the conscript, from one class to another. The persons conscribed by the act may be divided into three classes : First, junior reserves for State defense, embracing persons between the ages of seventeen and eighteen ; second, the provisional army proper, or army in the field, embracing persons between the ages of eighteen and forty-five ; and third, the class of senior reserves, embracing persons between the ages of forty-five and fifty. The same language which defines the term of service of one class, defines the term of service of all the classes. They are all conscribed "for the war," or "during the war ;" and, as is stated above, the act is silent on the question of transfer from one class to another, except as a penalty for some omission of duty. If, by force of the words "for the war," those persons, who at the time they are brought into the service are between the ages of forty-five and fifty, are retained in the service, notwithstanding they may pass the age of fifty,

there is a logical necessity for holding that persons who are brought or retained in the active-duty service—those between eighteen and forty-five—shall continue in that active service, notwithstanding they may pass the age of forty-five, or even of fifty. Further, there is a logical necessity for holding that persons who, being between the ages of seventeen and eighteen when they are conscribed, are placed in the class of junior reserves, shall be retained in that class till the end of the war, notwithstanding they may pass the age of eighteen. All, when conscribed, are in *for the war*, by language equally imperative in each class of cases; and if, by construction, we discharge or transfer one class, by the same process of reasoning we must discharge or transfer all the classes, when they reach the maximum age of such classes.

An examination of the fifth and sixth sections of the act will elucidate what is last above stated. The fifth section provides for the enrollment of persons between the ages of seventeen and eighteen, and forty-five and fifty; and declares, that the "persons mentioned in this section shall constitute a reserve for State defense and detail duty, and shall not be required to perform service out of the State in which they reside." The sixth section declares, "that all persons required by the fifth section of this act to enroll themselves may, within thirty days after the passage hereof, east of the Mississippi river, and within sixty days if west of said river, form themselves into voluntary organizations of companies, battalions, or regiments, and elect their own officers,—said organizations to conform to the existing law; and having so organized, to tender their services, as volunteers *during the war*, to the president; and if such organization shall furnish proper muster-rolls" &c., "they may be accepted as minute-men for service in such State; but, in no event, to be taken out of it." Now, this section relates alone to "reserves for State defense and detail duty;" it embraces both the junior and senior classes of State reserves; and as to both of these classes, provides, that such of them as form themselves into "voluntary organizations," and tender their services to the president as volunteers "during the war," *may be accepted as minute-men for service*

*in such State, but in no event to be taken out of it.* If the words, " for the war," and " during the war," found in the first and second sections of the act, hold the persons mentioned in those sections till the end of the war, notwithstanding they may pass the age of fifty before peace is declared; it is impossible to resist the conclusion, that under the words " during the war," in the sixth section, the *reserves, junior* as well as senior, who form themselves into "voluntary organizations," &c., become minute-men for service in the State, in no event to be taken out of it ; and that they remain in this service till the end of the war, although they may pass the age of eighteen before that time.

Possibly we may obviate the difficulties which lie in our path, by regarding the words " for the war," and " during the war," found in the act of February 17, 1864, as used in contradistinction to the term of conscription prescribed by our former acts of congress—conscription for a term of years; and that the purpose of congress had no greater scope than to create, and continue in existence, an army, not for a definite period, but for an indefinite one,—*for the war.* If this view be the correct one, the first section of the act may be legitimately paraphrased, " *The military force of the Confederate States, during the present war, shall consist of all white men, residents of the Confederate States, between the ages of seventeen and fifty.*" Under this theory, liability to military service would consist in three requisites : the person must be a *white man,* a *resident of the Confederate States,* and *between the ages of seventeen and fifty.* Clothed with these three requisites, he is a conscript. Wanting either of them, he is not within the operation of the law.

The fifth, sixth and seventh sections relate to the *reserves, junior* and *senior.* When the junior reaches eighteen, he loses one of his qualifications as such, and passes to the army for field service. When the senior reaches fifty, he is discharged. This system has the merit of perpetually recruiting the army in the field with able-bodied young men of eighteen years of age ; of transferring to the corps of senior reserves men who reach the age of forty-five ; and discharging all when they reach the age of fifty. It

avoids the shocking inequality of retaining in the reserve force, *for the entire war*, no matter how long it may last, all the young men who were under the age of eighteen when the law was enacted.

The second section of the act under discussion presents no serious obstacle in the way of the construction indicated above. It was not the purpose of that section to declare who should compose the army for active duty in the field. Its words are not comprehensive enough for that, as we shall hereafter show. That the army in the field is made up of persons between the ages of eighteen and forty-five, results necessarily from the first, fifth, and sixth sections. The first section places all white men, residents, &c., in the military service of the Confederate States, who are between the ages of seventeen and fifty. Sections five and six provide, that all of the persons conscribed by the first section, between the ages of seventeen and eighteen, or forty-five and fifty, shall constitute a " reserve for State defense and detail duty." This necessarily leaves the residuum—those between eighteen and forty-five—liable to active service in the field. *Inclusio unius est exclusio alterius.*

The words, "during the present war with the United States," found in section two, are stated parenthetically. If it was an object at all, it was not the leading object of that section, to define the soldier's term of service. Its object was to keep up, *during the present war with the United States*, "the same regiments, battalions, and companies," with the same "organizations and officers;" and to retain all persons then in the service, who were between the ages of eighteen and forty-five, in the regiment, battalion, or company, to which they belonged at the passage of the act, unless regularly transferred or discharged. The words used in the sixth section, which hold the reserve in the place assigned him by the act, are quite as strong, if not stronger, than the words in the second section, in reference to the class for active duty in the field. Both employ the phrase, "during the war."

The second section, even if it be held to define and fix the status, *during the war*, of the *persons* covered by its terms, is by no means comprehensive enough to embrace

all the persons between the ages of eighteen and forty-five who were, by the first section, declared to be in the military service of the Confederate States. It was only such portion of them as were in service at the time the act was passed. "Now in service," is the language of the second section. Many persons, who were exempted under former acts of conscription, and some who had just then become eighteen years of age, and doubtless others not then in the service, were put in the army for field duty, by the act of February 17th, 1864. For these, the second section makes no provision. If we decide that the object of the second section was to hold the persons embraced by it, in service in the field until the end of the war, irrespective of age, we are then forced to hold that congress imposed this extreme term of service on that class who had the strongest claims on their generosity—those then in service; while it made no such provision for, and imposed no such terms on the less meritorious class—those then for the first time brought into the service. This view tends strongly to show that the purpose of the second section was, not to fix the term of service of the individual soldier, but to continue those then in service, and between the ages of eighteen and forty-five, in the same organizations to which they belonged at the time the act was passed.

The second section, operating as it does only on the persons who were, at the time of its enactment, between the ages of eighteen and forty-five, and in the service, makes no provision for those then over forty-five, although in the service. Its language is, "all the persons aforesaid, between the ages of eighteen and forty-five, now in service, shall be retained," &c.

Now, it is manifest that, when the act we are construing was passed—February 17th, 1864—there were persons, probably many of them, then in the service, who had just passed the age of forty-five, and who were in the service, serving out their term of three years under that clause of the act of September 27th, 1862, which declares that, "when once enrolled, all persons between the ages of eighteen and forty-five shall serve their full time."—Acts 1st congress, 62. These, to-wit, all who were then over forty-five, notwith-

standing they may have passed that age by but one day, were released from active duty in the field; and, as soon as their three years would expire, would pass by a new enrollment into the corps of senior reserves. If those mentioned in the second section are required to serve in the field until the end of the war, even though they pass the age of forty-five before that time, it needs must follow that, under the act of February 17, 1864, many veteran troops who wanted but one day, one week, one month, or six months, of being forty-five years old when the act was passed, will be required to perform active service in the field long after they are forty-five; while many other like veteran troops, who were then but a day, week, or month over the age of forty-five, will be released from active duty in the field, and required to perform only the duties of reserves for State defense. This view leads to an inequality, which it can be scarcely supposed congress intended.

The eleventh section authorizes details to be made "from persons between forty-five and fifty years of age, or from the army in the field;" and makes no provision for detailing persons after they reach the age of fifty. The language of the section is, "That the president be, and he is hereby, authorized to grant details, under general rules and regulations to be issued by the war department, either from persons between forty-five and fifty years of age, or from the army in the field." It would seem that, if reserves are retained in the service after they reach the age of fifty, there would then exist stronger reasons for detailing them, than there were before they reached that age. Yet, under the eleventh section, they can be detailed at any time before they reach the age of fifty, but not afterwards. This furnishes another strong argument against the construction which would retain them in the service after they reach the age of fifty.

In corroboration of the views stated above, I feel authorized to contrast the phraseology of the act of February 17, 1864, with the language of the act approved September 27, 1862, commonly called the "second conscript law."—Acts of first congress, second session, 61. That act, amending the first act of conscription, added to the military list "all

white men, who are residents of the Confederate States, between the ages of thirty-five and forty-five years, at the time the call or calls may be made,'' unless legally exempted, &c. It then provided, that "when once enrolled, all men, between the ages of eighteen and forty-five, shall serve their full time." This language fixed the service of persons placed in the army under its terms at their full term of three years, notwithstanding they might pass the age of forty-five before their term expired. In the act of February 17th, 1864, no such provision is found. This affords, at least, some argument in favor of the conclusion, that when the *reserve* under the act of 1864 reaches the age of fifty, he passes out of the service.

Driven to the necessity, then, of adopting the one construction or the other, I unhesitatingly adopt the continuing and rotary application of the act, which regards the first section as expressing qualifications which the conscript must possess; and, possessing which, places him "in the military service of the Confederate States for the war;" for an indefinite term, as contra-distinguished from the defined term required by former acts. This applies the act of conscription to a class or classes; that is, conscribes them, and places them in the service till the end of the war, so long as the person or persons are of the particular class. It continually keeps open the door for the conscription of young men, as they become seventeen years of age; or, being between the ages of seventeen and fifty, become residents of the Confederate States. When they reach the age of eighteen, it passes them from the junior-reserve force, to active duties in the field. When they reach the age of forty-five, they are transferred to the senior-reserve force; and at fifty they are discharged from service, having reached the maximum military age, in the scale fixed by congress.

Under the other construction, it is left in some doubt whether young men, becoming seventeen after the passage of the act, or becoming "residents" after that time, can be placed in any military service under its terms. It is clear, that no person who, under the operation of that act, is put in the service before he is eighteen, (and this includes

all who were under the age of eighteen when the act was approved,) can be transferred to the active-duty service, the class which performs active service in the field; nor can persons becoming forty-five be transferred to the class of senior reserves; or, becoming fifty, be discharged.

The supreme court of North Carolina, in the case of *Kesler*, and Judge Brockenbrough, of Virginia, in a case before him, have come to the same conclusion as to the senior reserves, which is announced above.

My brother PHELAN gives some additional reasons for concurring in the views above expressed. My brother WALKER concurs with us in the conclusion, for reasons stated by himself.

*Certiorari* refused.


A. J. WALKER, C. J.—I regard the question of this case as an exceedingly close and narrow one. I have carefully deliberated upon it, and I am inclined to think that congress did not intend to discharge from the service men attaining the age of fifty after their enrollment. I think I should so decide if the question were perfectly new, and not embarrassed by adjudications elsewhere. It is of the highest importance that the decision of the question should be uniform in the different States. It would obviously produce the most discordant and pernicious results for some of the State courts to discharge the reserves upon attaining the age of fifty, while others refused to discharge them. Under such a diversity of judicial action, the period of service would be dependent upon the locality where the soldiers happened to be. I think, therefore, that it is my duty as a judge to concede something of my own opinions, for the sake of uniformity of decision upon this subject. Judge Brockenbrough, of Virginia, a distinguished and able jurist, has held, in an opinion which I have seen in the newspapers, that the reserves pass out of the service on attaining the age of fifty years. The supreme court of North Carolina has decided the same way, C. J. Pearson delivering the opinion. I have seen no decision on the other side; and I presume that, both in Virginia and North Carolina, the courts will rule in accordance with the decisions above

noticed. Although I doubt the correctness of those decisions, and would be inclined to decide differently if the question were entirely new, I yield to them as an authority, because I will thus contribute to the procurement of uniformity of judicial action on the subject; because I entertain much doubt upon the question, and because those decisions are entitled to respect, both on account of the source from which they emanate, and the argument made in support of them. I therefore assent to the judgment which my brethren render, but prefer not to adopt their opinions.

PHELAN, J.—When I first brought my mind to an examination of the act of congress of 17th February, 1864, "to organize forces to serve for the war," I came to the opinion, as I then thought, confidently, that all men conscribed by that act were liable to military service "for the war," taking those words as defining their term of service. Further reflection, and a closer analysis of the several parts of this statute, have induced me to change that opinion. As the following reflections, in addition to the views presented by my brother STONE, have had a share of influence in bringing about this change, I deem it proper to present them.

The law of 17th February, 1864, "to organize forces to serve for the war," distinguishes the military service of the Confederate States into *two kinds*, and only two. The first, and most important, is *"service in the field,"* by which we understand the general army in the field, liable to service in any part of the Confederacy; and the second, *service in the "reserves,"* who are confined to service in their respective States. These reserves are to be composed of all white male residents in the Confederate States, between the ages of seventeen and eighteen and forty-five and fifty, and who, for this reason, are subdivided, when we speak of them, as junior and senior reserves. These reserves are required to enroll themselves, agreeably to certain regulations; and if they fail to do so, it is declared, that any one who fails "shall be placed *in service in the field, for the war*, in the

same manner as though he were between the ages of eighteen and forty-five."—See section five of the said act of congress.

These reserves are also allowed, upon certain conditions, to form themselves into voluntary organizations, and, upon being so organized, to tender their services, "as volunteers during the war, to the president," to be used as "minute-men" in their State, "but in no event to be taken out of it." Those who do not so organize are required to enroll, and, on the call of the president, to assemble at "places of rendezvous"; and it is declared of these also, that if any one shall fail to attend at the place of rendezvous, when summoned, without a lawful excuse, to be judged of by the president, "he shall be liable to be placed in *service in the field, for the war*, as if he were between the ages of eighteen and forty-five.—See 6th and 7th sections of the act.

Now, who are the men "in service in the field for the war"? They are "all white men, residents of the Confederate States," between the ages of eighteen and forty-five. We have shown, that two kinds of service embrace the whole military force of the Confederacy; and as the *service in the reserves* has taken all men between seventeen and eighteen, and between forty-five and fifty, the *residuum* of the entire military force—namely, the men between eighteen and forty-five—must be the men "in service in the field for the war."

But, are these men "in service in the field *for the war*," if we give to these latter words the office or meaning of limiting and defining the term of service of each conscript who belongs to that service between the ages of eighteen and forty-five? When we come to examine and consider the provisions of the 5th section, I confess I find difficulty in so holding.

We all agree that this act conscribes men as *a class*, and has a *continuing operation*. Now, the 5th section declares, "that all white male residents of the Confederate States, between the ages of seventeen and eighteen, and forty-five and fifty years, shall enroll themselves," &c.; and any person who shall fail to enroll himself, without a reasonable excuse, "shall be placed in the *service in the field, for the war*,

in the same manner as if he were between the ages of eighteen and forty-five." The language of this section, it will be observed, is broad and sweeping; in this respect precisely like that of the first section; "all white males residents of the Confederate States."

Let us suppose a man now in the service in the field, completes to-day his forty-five years, and to-morrow is over forty-five; that is, between forty-five and fifty. What does the law exact of that man? Does it not say, "he shall enroll himself" agreeably to the regulations prescribed, and, "if he fails to do so, without reasonable excuse," he shall be placed " *in service in the field, for the war*, as though he were between the ages of eighteen and forty-five" ?

If it is his duty, under the law, to enroll himself, (and the language of the act is very clear and positive,) then, by a necessary consequence, he is no longer *in the service in the field*. It is his privilege to claim and seek another, and a less onerous service, in fulfilling this duty to enroll. And, if all this be true, then the conscript between eighteen and forty-five never was "in the service in the field *for the war*," taking those words as defining his term of service. He was in the "service in the field" until he was forty-five, and no longer; and then, by enrolling, he was placed in another service—service in the reserves. But, if he failed to enroll, he was to be put back "in the service in the field," where he was before; but not now as an original *field-service* man, but as a *delinquent reserve*, of whom, under such circumstances, the law only declares, that he shall be placed "in service in the field, for the war," in the same manner as he was before, when he was between the ages of eighteen and forty-five; and this would be, as has been shown, only until he passed the age of the class into which he had now entered, the class of senior reserves, whose extreme limit is fifty years.

As nothing is said expressly in this act, by which one class is made to pass into another, if it can be fairly established, by implication, that a man in service in the field passes into the *senior reserves*, it then becomes a logical necessity that the rule should prevail through all the classes.

If, by implication, you deplete the army in the field, and these, as they arrive at forty-five, go into the class of senior reserves, then, by a like implication, the junior reserve at eighteen passes from his class to replenish the army of the field ; and the senior reserve, when he arrives at fifty, having reached the ultimate limit of the class conscription, goes out of the service altogether ; and it becomes unavoidable, under this view of the case, that the words "for the war" and "during the war," if they militate with this primary intention of the act, when construed as limiting and defining a term of service, must receive some other construction, if that be practicable. But we have seen that these words, as used in the 5th and 7th sections, in respect to the term of *field service,* will not bear such a construction ; because that service, according to the argument, can only continue until forty-five, and not "for the war"; and therefore these words, in this connection, were not intended to designate a term of service, but only the term or time during which the plan or scheme should operate. If this construction can be fairly placed on the words as they occur in the 5th and 7th sections, it gives room to argue that it may be where they occur in the first section, and in the title to the act. The act is one hard to construe, and difficulties beset us on either hand ; but I believe we shall best carry out the intention of congress, by adopting that construction which will put the young men over eighteen into the army in the field, the men over forty-five into the reserve service, and the men over fifty out of the military service entirely.

I concur in the judgment of the court.